Case 1:23-mj-00328-MAU   Document 1-1   Filed 1

Case: 1:23-mj-00328
Assigned to: Judge Upadhyaya, Moxila A.
Assign Date: 11/29/2023
Description: COMPLAINT W/ ARREST WARRANT

## STATEMENT OF FACTS

From December 2022 to the present, Homeland Security Investigations ("HSI") has been conducting a joint investigation with the Washington D.C. Metropolitan Police Department ("MPD") and the U.S. Postal Inspection Service ("USPIS") into a narcotics distribution point located at and around the 100 block of Yuma Street Southeast, Washington D.C. (hereinafter, the "YUMA BLOCK"). 144 Yuma Street Southeast is a property that includes an abandoned house as well as a shed in the back yard (hereinafter, the "YUMA SHED"). The investigation identified both the YUMA SHED and the YUMA BLOCK as a singular narcotics distribution point, wherein the narcotics dealers would typically congregate behind the YUMA SHED while also walking out onto the street on the YUMA BLOCK to conduct drug sales. As part of the investigation, law enforcement installed a pole camera on Yuma Street Southeast with a view of the YUMA BLOCK (hereinafter, the "YUMA BLOCK POLE CAMERA") as well as a pole camera in the rear of the YUMA SHED (hereinafter, the "YUMA SHED POLE CAMERA"). Through an investigation that included six audio- and video recorded controlled purchases of fentanyl by an undercover officer (hereinafter, the "UC" or "they"), law enforcement identified Alphonso **MURRAY** ("**A. MURRAY**"), Kevin **PENN**, Marquette **MURRAY** ("**M. MURRAY**"), and Christian **SIMMS** as members of a criminal conspiracy to distribute fentanyl on the YUMA BLOCK.

On August 3, 2023, an MPD UC walked to the rear of the YUMA SHED and engaged in conversation with **PENN**, who was seated on a concrete barrier. The UC stated, in sum and substance, that they were looking to purchase approximately $500.00 worth of fentanyl. **PENN** subsequently placed a phone call from phone XXX-XXX-9081 (a known phone number for **PENN**) to phone number XXX-XXX-5656 (a known phone number for **M. MURRAY**). At approximately the same time, the YUMA BLOCK POLE CAMERA recorded **M. MURRAY** seated in the front passenger seat of a 1997 Dodge Cargo van registered to **PENN**, and which was parked on the YUMA BLOCK. **M. MURRAY** subsequently walked to the rear of the YUMA SHED, engaged in conversation with the UC and **PENN**, and agreed to sell the UC $500.00 worth of fentanyl. **M. MURRAY** then retrieved a clear plastic bag that was concealed underneath a piece of the YUMA SHED's siding, counted out numerous bags after accepting $500.00 from the UC, and called out to **PENN** asking for "seven." **PENN** then approached the rear of the YUMA SHED, retrieved another clear plastic bag from underneath the siding, and counted out seven bags of fentanyl, which he handed to the UC at the same moment **M. MURRAY** handed the UC 43 bags of fentanyl. At the conclusion of the transaction, **M. MURRAY** provided his phone number to the UC as XXX-XXX-5656, which is **M. MURRAY's** phone number as identified above. In total, the UC purchased 50 bags of fentanyl for $500.00, which the CBP drug laboratory in Ashburn, VA later confirmed to be approximately 6.19 grams of a substance containing a detectable amount of fentanyl.

On September 6, 2023, the UC walked to the rear of the YUMA SHED and encountered **PENN** and **A. MURRAY**. The UC asked, in sum and substance, if **PENN** could sell the UC fentanyl to which **PENN** replied, "*Yeah, I got you.*" **PENN** then retrieved multiple bags of fentanyl which were concealed underneath the siding of the YUMA SHED and proceeded to count $550.00 provided by the UC. As **PENN** finished counting the money and began to count out pre-packaged bags of fentanyl, **A. MURRAY** walked over, retrieved the cash the UC provided to **PENN**, and placed it in his (**A. MURRAY's**) pocket. **A. MURRAY** then made comments about providing a bag for the UC to place the numerous fentanyl baggies that were purchased and proceeded to hand the UC a plastic grocery

1

bag which **A. MURRAY** retrieved from the area of the YUMA SHED's window. **A. MURRAY** held the bag for the UC to drop several of the fentanyl baggies that **PENN** had already provided to the UC, and **A. MURRAY** then held the grocery bag open for **PENN** as **PENN** placed additional fentanyl baggies into the grocery bag. During the transaction, **PENN** provided his phone number to the UC as XXX-XXX-9081, the same number HSI initially identified as **PENN's** phone number by correlating call data records with the timing of the call **PENN** made to **M. MURRAY** on August 3, 2023. In total, the UC purchased 42 bags of fentanyl for $550.00, which the CBP drug laboratory in Ashburn, VA later confirmed to be approximately 5.3 grams of a substance containing a detectable amount of fentanyl.

On September 14, 2023, the UC walked to the rear of the YUMA SHED and encountered **PENN** and **A. MURRAY**. Prior to this, the UC spoke with **PENN** by phone and arranged to purchase approximately $600.00 of fentanyl. The UC handed **PENN** $600.00 and while the UC was dealing with **PENN**, **A. MURRAY** called the UC over and asked, "*How they like the last one?*", referring to the last batch of fentanyl that the UC purchased from **PENN** and **A. MURRAY**. **PENN** then called for the UC and handed the UC a brown "Sweet Woods" brand, foil tobacco leaf wraps pouch that contained bags of pre-packaged fentanyl. The UC asked **PENN** about the cost of an ounce of fentanyl and **PENN** replied, "*Let me get the numbers together and I'll text you.*" As the UC began to depart the area, **PENN** walked over to **A. MURRAY** and the two men started talking. **PENN** then shouted to the UC "*You talking about the other girl?*" (referring to the purchase of cocaine). The UC replied, "no, this" and patted their pocket where the purchased fentanyl was located. In total, the UC purchased 45 bags of fentanyl for $600.00, which the CBP drug laboratory in Ashburn, VA later confirmed to be approximately 10.52 grams of a substance containing a detectable amount of fentanyl.

On September 21, 2023, agents monitored the YUMA SHED POLE CAMERA prior to conducting a controlled purchase of fentanyl. Approximately 50 minutes prior to the controlled purchase, agents observed **PENN, A. MURRAY, SIMMS**, and at least one other unidentified individual behind the YUMA SHED. **PENN** and **SIMMS** were both observed sitting at a table and appeared to be bagging fentanyl for sale, while **A. MURRAY** looked on. Shortly afterwards, the UC arrived and walked to the rear of the YUMA SHED and engaged in conversation with **PENN** and **A. MURRAY**. The UC then handed **PENN** $1,000.00 and shortly afterwards, **PENN** handed the UC a clear baggie that contained numerous smaller baggies of fentanyl powder. During this encounter, the UC and **PENN** discussed the price for an ounce of fentanyl at some point in the near future, eventually settling on $2,100.00. In total, the UC purchased 56 bags of fentanyl for $1,00.00, which the CBP drug laboratory in Ashburn, VA later confirmed to be approximately 10.59 grams of a substance containing a detectable amount of fentanyl.

On September 28, 2023, agents monitored the YUMA SHED POLE CAMERA prior to conducting a controlled purchase of fentanyl. Approximately 13 minutes prior to the controlled purchase, agents observed **PENN, A. MURRAY, SIMMS**, and at least one other unidentified individual behind the YUMA SHED. **PENN** and **SIMMS** were both observed sitting at a table and appeared to be bagging fentanyl for sale, in the same manner previously observed on September 14, 2023. Shortly afterwards, UC arrived and walked to the rear of the YUMA SHED and engaged in conversation with **PENN** and **A. MURRAY**. The UC handed **PENN** $2,100.00 and **PENN** pointed to a brown and black bag that was sitting on the table, implying that was the UC's fentanyl. The UC retrieved the bag and departed the area. A subsequent examination of the bag revealed 99 pre-packaged bags of fentanyl, which appeared to be far under the ounce that was agreed upon for sale.

The UC subsequently texted **PENN** at XXX-XXX-9081, stating in sum and substance that the quantity of fentanyl was less than agreed upon, and **PENN** replied he would "*make it up next Thursday,*" (October 5, 2023). In total, the UC purchased 99 bags of fentanyl for $2,100.00, which the CBP drug laboratory in Ashburn, VA later confirmed to be approximately 6.76 grams of a substance containing a detectable amount of Schedule II fentanyl.

On October 5, 2023, the UC walked to the rear of the YUMA SHED and encountered **A. MURRAY** and **PENN**. **PENN** handed the UC two bags of fentanyl; one bag which represented the amount **PENN** owed the UC from the September 28, 2023, purchase, and one bag which represented an additional $500.00 worth of fentanyl the UC purchased. As the UC completed the transaction with **PENN,** the UC walked over to speak with **A. MURRAY**, who had attempted to speak with the UC upon the UC's arrival. **A. MURRAY** stated he, "*just wanted to make sure everything was alright, that's all,*" in reference to the UC being shorted by **PENN** during the previous September 28, 2023, fentanyl purchase. **A. MURRAY** made a partially unintelligible statement about "*talking to him*" (**PENN**) and the UC replied it was "straight," to which **A. MURRAY** stated "*Ok yeah, I ain't want no bad business or nothing...just want to make sure you were good.*" In total, **PENN** provided the UC with two bags of fentanyl, which the CBP drug laboratory in Ashburn, VA later confirmed to be approximately 15.87 grams of a substance containing a detectable amount of 4-Fluorofentanyl; a Schedule I fentanyl analogue.

Based on the above stated facts, your affiant submits that probable cause exists that **Alphonso MURRAY, Kevin PENN, Marquette MURRAY**, and **Christian SIMMS** have violated 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C) (Conspiracy to Distribute and Possess with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Fentanyl and Any Analogue of Fentanyl).

Your affiant has not provided every fact known to him during the investigation, but facts sufficient to establish probable cause.

_____
SPECIAL AGENT JULIAN HERMAN
HOMELAND SECURITY INVESTIGATIONS

*Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 29th day of November, 2023.*

_____
MOXILA A. UPADHYAYA
U.S. MAGISTRATE JUDGE